Victoria L. Cotton v. Commissioner. Virginia Caldwell v. Commissioner.
Cotton v. Commissioner
Docket Nos. 2257, 7583.
United States Tax Court
1946 Tax Ct. Memo LEXIS 135; 5 T.C.M. (CCH) 618; T.C.M. (RIA) 46171; July 22, 1946
*135 A. Calder Mackay, Esq., Arthur McGregor, Esq., Howard W. Reynolds, Esq., 523 W. 6th St., Los Angeles, Calif., Adam Y. Bennion, Esq., and Hugh G. Arnold, C.P.A., for the petitioners. H. A. Melville, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: This is a proceeding to redetermine gift tax deficiencies found against petitioners for the calendar year 1941 as follows: Docket
No.
2257
Victoria L. Cotton
$ 7,845.75
7583
Virginia Caldwell
18,645.51
Petitioner, Victoria L. Cotton, claims that she overpaid her gift tax for 1941 on the ground that she had paid a gift tax on 200 shares of stock of the Carson Estate Company at a valuation of $250 per share, whereas the true value of said stock was but $175 per share. During the hearing counsel for respondent, by permission of the Court, filed an amended answer in Docket No. 7583, Virginia Caldwell, asking for a determination of an increased deficiency based upon the claim that the fair market value of the stock of the Dominguez Estate Company formerly determined by the Commissioner to be $950 per share, should be determined by the Court to be $1,000 *136 and that the stock in the Francis Land Company, formerly determined by the Commissioner to be of the value of $1,045 per share, should be determined by the Court to be $1,100 per share. The questions to be resolved herein are as follows: (1) What was the fair market value of 200 shares of stock of Carson Estate Company on June 5, 1941? (2) What was the fair market value of 100 shares of the Dominguez Estate Company on August 11, 1941? (3) What was the fair market value of 105 shares of stock of the Francis Land Company on August 11, 1941? At the hearing the parties stipulated as follows: That Docket Nos. 2257 and 7583 should be consolidated for hearing, consideration and opinion; That the oral and documentary evidence and stipulation in Docket No. 2257 should be deemed to have been received also in Docket No. 7583; That for the purposes of this proceeding any reference to the date of June 5, 1941 and any valuation as of that date shall be applicable to the date of August 11, 1941; and That the market value of any assets stipulated or determined by the Court as of June 5, 1941, shall be deemed to be the fair market value as of August 11, 1941; and That the condensed *137 balance sheets of the three companies and the stockholdings of the three companies introduced in evidence, bearing date of May 31, 1941, shall be considered as of June 5, 1941, prior to the gifts of stock made by the petitioners herein in 1941. For the purpose of brevity, Dominguez Estate Company will be designated as Dominguez, the Francis Land Company will be designated as Francis and Carson Estate Company will be designated as Carson. Findings of Fact Dominguez, Francis and Carson were three closely owned holding companies. Dominguez had outstanding 10,499 shares of stock. 5,499 shares of this stock was held by Francis and this latter company had 5,000 shares of stock outstanding. Carson owned 1,785 shares of Francis and 1,353 of Dominguez and had outstanding 7,412 shares of stock. Each of these corporations had but one class of stock outstanding and substantially all of the shares not owned by the respective corporations, were owned by relatives of petitioners. The condensed balance sheet of Dominguez on June 5, 1941, eliminating capital stock liabilities and surplus, is as follows: Stipulated Fair
Assets
Book Value
Market Value
Current Assets
$ 869,889.84
$ 869,889.84
Stocks and Bonds
2,059,292.29
1,141,269.74
Ranch Real Estate
3,741,170.35
1,629,950.00
Other Real Estate
3,133,410.63
1,631,266.69
Oil Properties
4,500,000.00 *
Total Assets
$9,803,763.11
$9,772,376.27
Liabilities
Current Liabilities
$ 239,416.50
$ 292,677.09
*138 The condensed balance sheet of Francis on June 5, 1941, eliminating capital stock liabilities and surplus, is as follows: Stipulated Fair
Assets
Book Value
Market Value
Current Assets
$ 10,919.59
$ 10,919.59
Stocks and Bonds
21,630.00
21,630.00
Other Real Estate
50,672.31
50,672.31
Investment in Dominguez Estate
Co. 5499 shs. at $1,019 per share
5,603,865.93
4,949,100.00 *
Total Assets
$5,687,087.83
$5,032,321.90
Liabilities
Current Liabilities
$ 65,241.02
$ 85,331.34
The condensed balance sheet of Carson on June 5, 1941, eliminating capital stock liabilities and surplus, is as follows: Stipulated Fair
Assets
Book Value
Market Value
Current Assets
$ 201,936.05
$ 201,936.05
Stocks and Bonds
12,688.51
None
Ranch Real Estate
885,637.50
446,418.04
Other Real Estate
528,322.04
147,200.00
Oil Properties
285,000.00 *
Investments: Dominguez - 1353 sh. at $722
977,119.31
1,217,700.00 **
Francis - 1785 sh. at $1,137
2,029,045.20
1,767,150.00 **
Total Assets
$4,634,748.61
$4,065,404.09
Liabilities
Current Liabilities
$ 26.00
34,157.48
*139 The earned surplus for these three companies for the years 1927 to May 31, 1941, * is as follows: Year
Dominguez
Francis
Carson
1927
$ 7,913.89
$ 13,732.96
1928
(50,714.37)
$77,427.77
18,750.81
1929
None
36,377.95
67,236.79
1930
275,266.69
29,244.78
72,689.18
1931
87,536.21
43,329.36
20,429.03
1932
52,870.12
11,250.34
48,482.01
1933
368,819.31
6,905.33
33,381.71
1934
(15,810.95)
11,685.33
71,180.16
1935
226,215.97
8,534.14
108,012.81
1936
587,204.59
8,538.04
133,927.02
1937
832,257.15
6,491.88
151,774.45
1938
1,116,176.87
4,658.83
179,554.78
1939
1,049,771.14
4,212.39
206,025.81
1940
790,124.61
2,803.53
231,369.88
1941 (to May 31)
749,224.21
15,119.88
253,315.11
Petitioner, Victoria L. Cotton, is a resident of San Clemente, California, *140 and filed her gift tax return for 1941 with the collector of internal revenue for the sixth district of California. On June 5, 1941, she gave her two daughters Lucy Cotton and Victoria Cotton Ogden 100 shares each of Carson stock. She valued these shares at $250 per share and paid the tax thereon. The Commissioner determined their value to be $600 per share. Petitioner Virginia Caldwell is a resident of Los Angeles, California, and filed her gift tax return for 1941 with the collector of internal revenue for the sixth district of California. On August 11, 1941, she gave to James Caldwell Cooper 25 shares of stock of Dominguez and to Grace Caldwell Cooper 75 shares of stock of Dominguez and 105 shares of Francis. These gifts were reported and gift tax paid on a value of $340 per share for the Dominguez stock and $374 per share for the Francis stock. The shares of these companies are not listed and are not traded or dealt in on any market. The oil properties listed in Dominguez balance sheet consisted of royalties payable in kind or at current posted prices at the election of Dominguez. This is not an operating company. It has frequently elected to take its royalties in kind *141 from the most valuable well and this oil has been sold at a substantial advance above posted prices. It is estimated that in these oil wells Dominguez will receive before the exhaustion of the wells 7,992,871 barrels of oil which, at the estimated posted prices, will produce a royalty income of $9,029,979. At the time of the gifts involved herein and for some years prior thereto there had been considerable curtailment of production in the California oil fields. Practically all of the so-called ranch real estate owned by Dominguez was not income producing but was being held for the purpose of possible development of oil properties. For the five years prior to 1941 and the first five months of 1941 the dividends per share of Dominguez were as follows: 1936
$61.50
1937
66.00
1938
74.00
1939
72.00
1940
72.00
1941 (5/12ths of $82)
34.00
For the five years preceding 1941 and the first five months of 1941 the dividends paid per share by Francis were as follows: 1936
$66.50
1937
71.50
1938
78.50
1939
77.75
1940
76.25
1941 (5/12ths of $84.50)
35.20
The total dividends paid by Carson for the five years preceding 1941 and 5/12ths of *142 1941 were as follows: 1936
$230,428.00
1937
248,302.00
1938
216,869.21
1939
237,184.00
1940
237,184.00
1941 (5/12ths of $252,008)
105,003.30
From June 1936 to April 1941 the stockholders of Dominguez made repeated transfers of the stock in said company at a valuation of $1,000 per share. In 1940 two shares were transferred from one brother to another at a valuation of $700 per share. In 1939 Victoria L. Cotton transferred to her two daughters 99 shares at $1,000 per share. In the official report of Dominguez to its stockholders in 1941 it was stated that the appraised value of the stock of Dominguez was $1,000 per share. From October 1936 to April 1941 repeated transfers of stock in Francis occurred among the members at a valuation of $1,100 per share. There were also a few transactions at slightly less than this amount and on January 18, 1939, Victoria L. Cotton sold 35 shares of this stock to her two daughters for a consideration of $35,000. From 1935 to 1940 a few sales of the stock of Carson had occurred at $300 per share. In 1936 Dominguez set aside a fund of $500,000 to purchase its own stock from any of its members who desired to sell at a *143 price not to exceed $1,000 per share, it being the declared purpose of the directors to prevent any of this stock being sold on the open market. The fair market value of 200 shares of stock of Carson Estate Company on June 5, 1941, was $100,000. The fair market value of 100 shares of Dominguez Estate Company on August 11, 1941, was $90,000. The fair market value of 105 shares of stock of Francis Land Company on August 11, 1941, was $103,950. Additional stipulations in this record concerning the earnings and the financial operations of these three companies are incorporated herein by reference. Most of these stipulations were referred to by the various experts who testified in the case as constituting factors in their conclusions. Opinion This case consumed more than one week in oral hearings and resulted in 765 pages of transcribed testimony, with numerous exhibits made up of many sheets of complicated and involved figures. Petitioner has submitted two briefs containing 290 printed pages and the respondent has answered with one of 177 pages, all of this being devoted to the analysis of the testimony of 14 experts, six submitted by the petitioner and eight by the respondent. *144 The basic purpose of all of this outlay of effort is to establish what would have been the fair market value of the stock involved if on the basic date there had been a willing seller who would have consummated a sale with a willing buyer and neither of them being under compulsion. Needless to say, neither of these imaginary individuals has ever existed. There have been no real sales of any of this stock involving other than families of the stockholders and it has been the declared purpose of the managers of the basic company, Dominguez, that none of this stock should be sold on the open market. In this case, if it were not for the fact that the Commissioner has abandoned his original determination of value of the Dominguez stock and asked for an increased valuation, by which act he has cast some doubt upon the presumption of correctness of his determination; and also if it were not for the fact that the expert testimony produced by the Commissioner at the hearing failed in some respects to support the Commissioner's finding, we would be very much inclined in a case involving so many speculative and argumentative factors to accept the Commissioner's finding as our own and rely on *145 the presumption that it is correct. The speculative factors to which we refer involve the effect of the prospect of increased taxation on the price of stock; the effect of falling interest rates generally; of the World War which some people contemplated as being inevitable in the spring of 1941; of the possibility of future price controls on the one hand and almost unlimited Government purchases on the other; of stock market fluctuations in 1941 (concerning the nature of which there is considerable dispute); of the probability of the lifting of control on production of oil wells generally; of the weight to be given in considering the price of this stock to the possession by the corporations involved of ranch land producing no present income but being held for oil well development; and of the relative merits of various methods of appraising oil well property. These were among the most frequently mentioned factors which the experts testified that they took into consideration in evaluating this stock along with the tangible assets, the past earning records and future earning prospects of these different companies. One of petitioners' experts in speaking of these various factors and *146 methods of appraisement said: I used the method of making all these appraisals, wrapping them up and looking them over and weighing them and arriving at my estimate. Market value must be an estimate. It can't be a precise meticulous mathematically derived figure. It has to be an estimate. It is based on the conception of a transaction which did not take place between two persons who do not exist. Counsel for petitioners in their brief say of the involved character of a determination of value under conditions such as exist in the present case: * * * This is a type of judgment which a lawyer or a judge cannot be expected to have with respect to all types of property any more, for example, than a man skilled in real estate in one part of the country would be able to express a competent opinion as to the value of land in another section of the country where local conditions are unknown to him. It is in this last respect that the opinions of expert witnesses become material, for through them the court is able to bring sound judgment to bear upon specific facts. With this in mind we have analyzed the evidence as to the value of this stock under the following heads: Petitioners' *147 witnesses, respondent's witnesses, interfamily sales, and appraised value by companies and officers. PETITIONERS WITNESSES Oil Royalties
Shares of Stock at Issue
Owned
Witnesses:
by Dominguez
Dominguez
Francis
Carson
Wents
$2,701,361.00
Paine
3,000,000.00
$420.00
$420.00
Lovelace
418.00
367.00
$214.00
McFie
304.00
334.00
192.00
McCuen
380.00
375.00
240.80
Eitner
4,988,600.00
407.00
425.50
230.00
RESPONDENT'S WITNESSES Oil Royalties
Shares of Stock at Issue
Owned
Witnesses:
by Dominguez
Dominguez
Francis
Carson
Evans
$4,000,000.00
Webb - (100 times monthly earnings -
approximate computation)
5,335,000.00
Pemberton
4,000,000.00
Clute
4,450,000.00
Corey
4,330,255.00
Phillips
4,934,391.00
$759.00
$ 834.74
$444.82
Gally
861.46
947.60
518.13
Grimes
4,819,070.00
933.31
1,026.64
558.78
INTERFAMILY SALES Dominguez $700 to $1,000
Francis
$1,000 to $1,100
Carson
$300.00
INTERCOMPANY RATINGS Dominguez - Board of Directors
$1,000.00
Francis - Book Value
1,019.00
Carson - Book Value
722.00
$1,137.00
*148 After reviewing this record, examining exhibits, studying the briefs, the asset value of the stock of the respective corporations, their past earnings, the prospects of future earnings, and all speculative and other factors affecting the price of these stocks on the dates of the gifts, it is our conclusion that their fair market value on these dates was as follows: Dominguez Estate Company Stock $900 per share
Francis Land Company Stock
990 per share
Carson Estate Company Stock
500 per share
Judgment will be entered under Rule 50. Footnotes
*. Valuation determined by the Court after hearing in this case.↩
*. Determined by the Court after hearing at $900 per share.↩
*. This amount was stipulated at the hearing. ↩
**. These amounts were determined by the Court after hearing at $900 per share for Dominguez and $990 per share for Francis.↩
*. Due to the fact that these companies kept their books on a cash basis, the amount for 1941 is a rough estimate but is not sufficiently incorrect to affect the finding in this case.↩